NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NASDAQ OMX GROUP, INC.,

        Plaintiff,

v.

ORDER EXECUTION SERVICES HOLDINGS, INC.; PRINCETON FINANCIAL TECHNOLOGY GROUP, LLC; RICHARD ROE COMPANIES 1-10; David SCHECKEL; David MITCHELL; Brian CAPUANO; Raymond RHONE; George LAWLOR; Richard PAOLILLO; John DOES 1-20,

        Defendants.

Civ. No. 12-6854

OPINION

THOMPSON, U.S.D.J.

        This matter comes before the Court upon five motions. Defendant Richard Paolillo ("Paolillo") has moved to dismiss the Amended Complaint and Jury Demand pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a) and 9(b). (Doc. No. 7). Defendant David Mitchell ("Mitchell") has also moved to dismiss based upon lack of standing and Federal Rules of Civil Procedure 8(a) and 9(b). (Doc. No. 10). Defendants Raymond Rohne ("Rohne")[1] and George Lawlor ("Lawlor") have filed motions to dismiss, in which they join the arguments of Paolillo and Mitchell. (Doc. Nos. 14, 24). Plaintiff NASDAQ OMX Group, Inc. ("NASDAQ") has moved to remand/abstain. (Doc. No. 12). The Court has reached its decision after consideration of the written submissions of the parties in accordance with Federal Rule of Civil Procedure

---

[1] Rohne is referred to incorrectly in the Amended Complaint and in the case caption as "Rhone."

78(b) and Local Rule 78.1(b). For the reasons included herein, the Court grants NASDAQ's motion to remand/abstain, and denies the four motions to dismiss as moot.

BACKGROUND

I.  Initial State Court Action, the Amended Complaint, and the Bankruptcy Proceeding

This action arises from the October 5, 2011 filing of suit by NASDAQ against Defendants Order Execution Services Holdings, Inc. ("Holdings") and Princeton Financial Technology Group, LLC ("Princeton") in the Superior Court of New Jersey, Mercer County. (Doc. No. 1, Att. 1, "Amd. Compl.," at ¶ 37). NASDAQ then amended its Complaint, adding Defendants Richard Roe Companies 1-10, David Scheckel ("Mr. Scheckel"), Brian Capuano ("Mr. Capuano"), Mitchell, Rohne, Lawlor, Paolillo, and John Doe(s) 1-20. (Amd. Compl.).[2]

The allegations of the Amended Complaint are as follows: from July 27, 2006, the date that NASDAQ executed a Membership Services Agreement with a company called OES Brokerage LLC ("Brokerage"), to at least October 2011, NASDAQ licensed services under

---

[2] NASDAQ is a Delaware corporation with a principal place of business in New York City. (Amd. Compl. at ¶ 1). Holdings is a Delaware corporation with a former principal place of business in Newark, NJ. (Amd. Compl. at ¶ 2). Princeton is a New Jersey limited liability company with a former principal place of business in Newark, NJ. (Amd. Compl. at ¶ 3). The Richard Roe Companies 1-20 are the fictitious names for yet to be identified limited liability companies, limited liability partnerships, limited partnerships, corporations and other corporate entities. (Amd. Compl. at ¶ 4). Mitchell and Paolillo are adult individuals residing in New Jersey. (Amd. Compl. at ¶¶ 6, 10). Capuano is an adult individual residing in Pennsylvania. (Amd. Compl. at ¶ 7). Lawlor is an adult individual in New York. (Amd. Compl. at ¶ 9). Rohne is listed in the Amended Complaint as also residing in New York, (Amd. Compl. at ¶ 8), although Rohne denies this in his *pro se* joint answer, (Doc. No. 6, Answer, at ¶ 8). Scheckel is an adult individual who, in the Amended Complaint is listed as residing in New Jersey, (Amd. Compl. at ¶ 5), but in the ensuing papers and conversations with the Court, is identified as living abroad. Defendants John Doe(s) 1-20 are the fictitious names for yet to be identified adult individuals. (Amd. Compl. at 11). Scheckel, Mitchell, Capuano, Rohne, Lawlor, Paolillo, and John Doe(s) 1-20 are at times referred to in this Opinion as the "individual defendants."

separate service contracts to a group of affiliated entities organized under the umbrella of Holdings. (Amd. Compl. at ¶¶ 14-17, 24). This group of affiliated entities included, *inter alia*, Princeton, Brokerage, and Qubit Technologies. LLC ("Qubit"). (Amd. Compl. at ¶ 14).

Under the initial agreement with Brokerage, Brokerage received access to NASDAQ's membership services in exchange for monthly membership and trading fees. (Amd. Compl. at ¶ 25). In the beginning of 2009, however, Brokerage started to delay payment of those fees. (Amd. Compl. at ¶ 26). By June 2010, all payment ceased. (Amd. Compl. at ¶ 28). Brokerage's broker-dealer operations similarly declined, halting in September 2010. (Amd. Compl. at ¶ 27). The cessation of payment left Brokerage in breach of the Membership Services Agreement and in debt to NASDAQ in the amount of $2,002,505.84. (Amd. Compl. at ¶¶ 28-29).

NASDAQ alleges that concurrent with the above breach, the defendants named in this action concocted an elaborate ruse to strip assets away from Brokerage for their own benefit and to the detriment of NASDAQ and other creditors. (Amd. Compl. at ¶¶ 13, 19). These assets were transferred from Brokerage to an ever-changing group of shell companies (including Princeton and Qubit), whose assets were also stripped. (Amd. Compl. at ¶¶ 13, 19). NASDAQ had separate service agreements with these entities apart from the initial agreement with Brokerage. (*See, e.g.*, Amd. Compl. at ¶¶ 15-17). Whenever one entity would default on its contract with NASDAQ, another affiliated entity would spring into existence to execute a separate contract. (Amd. Compl. at ¶ 17). As an example, as Brokerage's activities with NASDAQ declined, Princeton's activities with NASDAQ increased. (Amd. Compl. at ¶ 27).

On December 28, 2010, NASDAQ was served with notice that Brokerage had filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware, *In re OES Brokerage Services LLC a/k/a/ ABS Brokerage*

*Services, LLC*, Case No. 10-13249 (D. Del.) (the "Delaware Bankruptcy Case"). (Amd. Compl. at ¶ 34). The Bankruptcy Court subsequently issued an automatic stay with regards to actions against Brokerage or actions against or to recover property of the Brokerage Estate (referred to herein as "the debtor estate" or "the estate") while the Chapter 7 Trustee marshaled estate assets. (Amd. Compl. at n. 2).

During the pursuit of its claims in the Delaware Bankruptcy Case, NASDAQ obtained documents indicating that Princeton and Holdings are alter egos of Brokerage. (Amd. Compl at ¶ 36). The documents purportedly show that Princeton absorbed Brokerage's business and left the debt behind. (Amd. Compl at ¶ 36). It was this discovery that prompted the filing of the 2011 Complaint and subsequent Amended Complaint.

In the Amended Complaint, NASDAQ delineates twelve counts seeking four types of relief: (1) to pierce the corporate veil with respect to both the corporate and individual defendants, (Amd. Compl., Counts I & VI, at ¶¶ 90-95, 137-42); (2) to assert successor liability against the corporate defendants, (Amd. Compl., Count II at ¶¶ 97-106); (3) to bring claims of three fraudulent transfers pursuant to N.J.S.A. § 25:20, *et seq.*, against all Defendants, (Amd. Coml., Counts III-V, X-XII, at ¶¶ 108-134, 158-85); and (4) to assert a breach of fiduciary duty on the part of the individual defendants with regards to those transfers, (Amd. Compl., Counts VII-IX, at ¶¶ 143-56). The three alleged fraudulent transfers concern, in turn, the transfer of assets between (1) Brokerage (the debtor) and Princeton; (2) Princeton and Qubit; and (3) Holdings and a company called New Qubit. (*See generally* Amd. Compl.).

II.     Removal and Subsequent Motions to Dismiss and Abstain/Remand

On November 5, 2012, Paolillo filed a timely notice of removal pursuant to 28 U.S.C. § 1452, arguing for District Court jurisdiction under 28 U.S.C. § 1334 given the Amended

Complaint's purported relation to the Delaware Bankruptcy Case.[3] (Doc. No. 1, "Not. of Removal," at ¶ 6). In support of removal, Paolillo asserted (1) that Holdings and its affiliates are the Debtor, and NASDAQ, a Creditor, in the Delaware Bankruptcy Case, (Not. of Removal at ¶ 6); (2) that based upon information and belief, the allegations contained in the New Jersey State Court action arise from the same facts and transactions as those in the Delaware Bankruptcy Case, (Not. of Removal at ¶ 6); and (3) that Paolillo had been advised that he will be subject to a Bankruptcy Rule 2004 Examination based upon his position as Controller of Holdings from June 2007 through May 2010. (Not. of Removal at ¶ 7). Subsequent to the removal action Paolillo and Mitchell filed their motions to dismiss. (Doc. Nos. 7, 10). On December 5, 2012, NASDAQ filed its motion to remand/abstain. (Doc. No. 12). In the weeks following, Lawlor and Rohne also filed motions to dismiss in which they joined the arguments of Paolillo and Mitchell. (Doc. Nos. 14, 214).

Given the factual overlap between this matter and the Delaware Bankruptcy Case, and the lack of any definitive action on the part of the Chapter 7 Trustee or the defendants in the Delaware Bankruptcy Court to stay the matter pending resolution of the proceedings there, presiding Bankruptcy Judge Brendan L. Shannon held a status conference (the "Delaware Status Conference") on May 23, 2013. (Doc. Nos. 32, 34, Att. 1, Ex. A, "Del. B.R. Transcript").

---

[3] 28 U.S.C. § 1452(a): "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

28 U.S.C. § 1334(a): "Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11."

28 U.S.C. § 1334(b): ". . .the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

At the Delaware Status Conference, the Chapter 7 Trustee indicated that those portions of NASDAQ's complaint alleging fraudulent transfers through or from Princeton are not in the estate's field of interest, as those particular assets were not and never would be part of the estate. (Doc. No. 34, Att. 1, Ex. A, Del. B.R. Transcript, 4:8-21). The Trustee did indicate, however, that claims concerning the assets of Brokerage *are*, in the first instance, claims of the estate, but whether the estate would pursue them was an open question pending a possible cost-benefit analysis. (Doc. No. 34, Att. 1, Ex. A, Del. B.R. Transcript, 4:6-25; 5:1-4). The Trustee also indicated a desire to discuss with NASDAQ which claims in the complaint may belong to the estate, and where applicable, whether the estate would consent to their pursuit by NASDAQ. (Doc. No. 34, Att. 1, Ex. A, Del. B.R. Transcript, 5:18-24).

NASDAQ agreed with the Trustee's recitation of the facts and the need for a discussion on sorting claims. (Doc. No. 34, Att. 1, Ex. A, Del. B.R. Transcript, 6:16-18). NASDAQ further emphasized the presence of claims in the Amended Complaint unquestionably separate from the debtor estate, such as those against individual defendants for tort wrongs or wrongs committed directly against NASDAQ. (Doc. No. 34, Att. 1, Ex. A, Del. B.R. Transcript, 6:19-24). Counsel for Paolillo also spoke, summarizing some of the procedural history in the present matter and contending that, while defense counsel did not seek relief from the Bankruptcy Court, the Delaware Status Conference appeared to indicate a changing "landscape" with respect to the pending motions. (Doc. No. 34, Att. 1, Ex. A, Del. B.R. Transcript, 9-11).

On June 7, 2013, this Court held an in-person status conference for NASDAQ and the moving defendants. After a further review of the papers in light of the conference, the Court has determined it appropriate to abstain with regards to this matter and remand to State Court. As such, the following discussion engages only in the question of abstention.

DISCUSSION

NASDAQ's motion to abstain and/or remand proposes three grounds on which the Court might decline jurisdiction and permit this case to proceed in State Court: (1) mandatory abstention; (2) permissive abstention; and (3) equitable remand. Beginning with mandatory abstention, the applicable statute provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Given NASDAQ's timely motion to abstain and the fact that only nondebtors and state law claims are involved, this Court would ordinarily abstain without further consideration.

Given the briefing and the information gleaned at the status conferences, however, it appears there is some question as to whether or not the pending matter touches upon the property of the estate, which is currently the subject of an automatic stay and under the control of the Chapter 7 Trustee. Linked to this concern is the issue of whether the suspect claims are properly considered "core" under 28 U.S.C. § 157, the statute which establishes the procedures by which a bankruptcy court may hear certain matters and the district court may make referrals. Matters involving core proceedings under 28 U.S.C. § 157 fall outside of the purview of mandatory abstention. *See, e.g., Balcor/Morristown Ltd. Partnership v. Vector Whippany Assocs.*, 181 B.R. 781, 789 (D.N.J. 1995) (finding that Congress has incorporated the core/non-core distinction enshrined in 28 U.S.C. § 157 into whether or not mandatory abstention applies).

"Although § 157(b) does not precisely define 'core' proceedings, it nonetheless provides an illustrative list of proceedings that may be considered 'core.'" *Halper v. Halper,* 164 F.3d 830, 836 (3d Cir. 1999). After reviewing this list, the Court must then apply the test enumerated by the Third Circuit whereby a proceeding is core if it (1) "invokes a substantive right provided by title 11" or (2) "is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Integrated Health Servs., Inc.*, 291 B.R. 615, 618 (Bankr. D. Del. 2003) (citing *Halper*, 164 F.3d at 836; *Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990)).

The Court finds that, while the claims in the Amended Complaint do not appear to invoke a substantive right provided by title 11 or arise only in the context of a bankruptcy case, fraudulent transfers of property within the debtor's estate *are* included in the illustrative list of §157(b). 28 U.S.C. § 157(a)(2) ("Core proceedings include . . . proceedings to determine, avoid, or recover fraudulent conveyances."). Although NASDAQ has argued vociferously in its briefing that the Amended Complaint concerns only those assets belonging to NASDAQ that were *licensed* by Brokerage, the Delaware Status Conference revealed that the Chapter 7 Trustee, at least, considers some of NASDAQ's claims as likely touching upon property of the estate. Thus, despite the fact that the Trustee has taken no formal action to stay or interfere with these proceedings for the better part of two years, the Court will decline to exercise mandatory abstention in the event that further meetings between NASDAQ and the Trustee reveal definitively that estate property is in issue.

Turning, then, to the question of permissive abstention, the Court notes that, unlike in the case of mandatory abstention, the issue of whether a claim is "core" does not preclude the Court from permissively abstaining under 1334(c)(1). *See, e.g.*, *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006), *aff'd*, 265 F. App'x 141 (3d Cir. 2008) ("Another critical distinction between

mandatory and permissive abstention for purposes of this case is that, unlike section 1334(c)(2), section 1334(c)(1) indicates that permissive abstention applies to both core and non-core proceedings."). Neither does the presence of a "core" issue in a complaint *require* the Court to refer the matter to the Bankruptcy Court. *See* 28 U.S.C. § 157 ("Each district court *may* provide that any or all cases under … arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." (emphasis added)).

> The relevant provision governing permissive abstention dictates that:
>
> Except with respect to a case under Chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). In addition to these considerations, courts in this Circuit have further consulted a somewhat flexible list of between 7 and 12 factors. The shorter, seven-factor list principally expounded upon by the parties in briefing counsels the Court to consider:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*See, e.g.*, *Shalom Torah Ctrs. v. Phila. Indem. Ins. Cos.*, Civil No. 10-6766, 2011 U.S. Dist. LEXIS 35726, at *12 (D.N.J. Mar. 31, 2011). Other factors from the more comprehensive, 12-factor list include (1) the jurisdictional basis of the case, if any, other than § 1334; (2) the substance rather than form of an asserted core proceeding; (3) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (4) the burden of the bankruptcy court's docket; (5) the likelihood commencement of the proceedings in bankruptcy court involves forum shopping by one of the parties; and (6) the presence in the proceeding of nondebtor parties. *See Lemonis v.*

9

*Doerge Cap. Collaterized Bridge Fund, L.P. (In re Holiday RV Superstores)*, 362 B.R. 126, 130 (D. Del. 2007).

In considering these many and varied factors, the Court must remember to apply them flexibly, prioritizing more relevant factors like "the effect on the estate's administration, whether the state law issues predominate, and whether the proceeding is core or non-core." *In re Kessler*, 430 B.R. 155, 166 (M.D. Pa. 2010) (maintaining further that the application of the relevant factors is not a "mere mathematical exercise").

Upon consideration of the law and the arguments, the Court has decided to abstain in this matter and permit the litigation to continue in State Court, even in lieu of referral to the Bankruptcy Court in Delaware. As a baseline matter, the Court considers the Superior Court of New Jersey an appropriate court of jurisdiction. All of the claims asserted involve matters of state law. While there may be a question as to whether some of the claims involve estate assets that fall within the purview of the Chapter 7 Trustee and the Bankruptcy Court, a review of the Amended Complaint reveals multiple claims that appear decidedly apart from matters of the estate, even without acceptance of NASDAQ's contention that the only assets it seeks are its own. The State Court or the Trustee may decide differently and act accordingly upon further review and discovery, but, at this moment, the Court does not believe the Amended Complaint should be barred from State Court consideration.

Similarly, the Court is unconvinced that the pursuit of this litigation in State Court, as opposed to in this Court or in the Delaware Bankruptcy Court, will have an adverse effect on the administration of the bankruptcy estate. The present matter involves nondebtors, is rife with nondebtor claims, and even the Trustee, while asserting the possibility that *some* of the claims as currently expressed may involve property of the estate, indicated uncertainty as to whether the

estate would ever pursue those claims.  The fact that state law issues predominate only bolsters the argument for abstention, even where the claims themselves are not particularly complex.  *In re Integrated Health Servs.*, 291 B.R. at 620-21 (finding that "even if a matter does not involve unsettled issues of state law, where the state law issues so predominate . . ." state court jurisdiction is favored).  Given the thin independent jurisdictional justification for maintaining the action in this Court, the Court would prefer, in the interests of judicial economy, not to burden the District Court's docket with questions better resolved swiftly and effectively by our State Court kin.  A bankruptcy judge in Delaware should likewise not, where possible, be tasked with non-bankruptcy state law claims.  *See, e.g.*, *Shalom*, 2011 U.S. Dist. LEXIS 35726, at *15-16 ("[T]he federal court should not rush to usurp the traditional precincts of the state court.").

Admittedly, a jury trial could be provided in both this Court *and* in State Court; on the other hand, a jury trial is not guaranteed in the Delaware Bankruptcy Court.  In considering possible prejudice to the parties, the Court notes that the transfer between this Court and State Court would be geographically equivalent, and, given that the litigation has barely advanced in either forum, would have little detrimental effect on parties and counsel.  Transfer to Delaware, however, would involve moving this case farther away from the four individual defendants living in the Tri-State area, and would be neutral for those living outside of either region.

Finally, the Court notes that this matter's initial removal to federal court from state court could arguably be seen as a means by which to delay the litigation of NASDAQ's legitimate claims against the individual defendants.  Whether or not such effect was intended by removal, the Court does not wish to further delay the pursuit of meritorious claims by either pausing this litigation until completion of the Delaware Bankruptcy Case (a case which will likely never

seriously overlap with the Amended Complaint in issue) or by adding it to the crowded dockets of either this Court or the Delaware Bankruptcy Court.

In reaching this conclusion, the Court is sensible to concerns that concurrent and conflicting actions in State Court and Bankruptcy Court may produce inconsistent results. However, the Court believes that here these concerns are minimal where the Chapter 7 Trustee, with full knowledge of this litigation, has failed to indicate that the automatic stay definitively applies to the current Amended Complaint or that debtor property is implicated, and where Defendants have failed to follow procedures by which the Delaware Bankruptcy Court might extend the stay. Certainly, abstention in favor of State Court jurisdiction does not mean that relevant claims may not be severed from the Amended Complaint as needed; in the meantime, the litigation may advance in the forum most suited for its disposal.

## CONCLUSION

For the foregoing reasons, the Court grants NASDAQ's motion to abstain, (Doc. No. 12), and denies the four pending motions to dismiss as moot, (Doc. Nos. 7, 10, 14, 24). An appropriate Order accompanies this Opinion.

/s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Dated: June 14, 2013